Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2105 | **DATE** | 8/4/2003 |
| **CASE TITLE** | BALDWIN PIANO, INC. vs. WURLITZER | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Plaintiff's motion to dismiss the counterclaim is granted.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | AUG 07 2003 | |
| ✓ | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | DW courtroom deputy's initials | 03 AUG -6 PM 4:09 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

BALDWIN PIANO, INC.,

    Plaintiff,

v.

DEUTSCHE WURLITZER GMBH d/b/a
WURLITZER JUKEBOX COMPANY,

    Defendants.

No. 03 C 2105
Judge James B. Zagel

DOCKETED
AUG 0 7 2003

## MEMORANDUM OPINION AND ORDER

Plaintiff and counter-defendant Baldwin Piano, Inc. ("Baldwin") is the owner of several federally registered "Wurlitzer" trademarks. For several years, defendant and counter-plaintiff Deutsche Wurlitzer GMBH ("DW") has manufactured, advertised, marketed, and sold various products bearing the Wurlitzer trademarks pursuant to a 1985 License Agreement. On March 24, 2003, Baldwin notified DW that the Agreement was being terminated immediately, that further use of the Wurlitzer trademarks by DW would be unauthorized, and that a complaint would be filed that day and served to protect its rights, which Baldwin subsequently did. In response, DW filed its Answer, Affirmative Defenses and Counterclaim, in it which asserts three claims against DW for breach of contract and implied covenant of good faith and fair dealing (Count I), unjust enrichment (Count II), and abuse of process under Illinois law (Count III).[1] Baldwin now moves to dismiss the Counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6). In considering a motion to dismiss, all well-pleaded allegations are taken as true, with the facts viewed in the light most favorable to the pleader. *Wolfolk v. Rivera*, 729 F.2d 1114, 1116 (7th Cir. 1984).

---

[1] The Agreement provides that it is to be governed by Illinois law.

Dismissal is proper if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984).

Count I: Breach of Contract and Implied Covenant of Good Faith and Fair Dealing

In Count I, DW alleges that by attempting to terminate the License Agreement for reasons other than material breach, Baldwin breached the contract and the implied covenant of good faith and fair dealing. In response, Baldwin argues that the Agreement was terminable at will because it was of infinite duration and that its termination of the license could thus not constitute a breach of contract.[2] Under Illinois law, "contracts of indefinite duration are terminable at the will of either party." *Jespersen v. Minnesota Mining and Mfg. Co.*, 700 N.E.2d 1014, 1016 (Ill. 1998). "An agreement without a fixed duration but which provides that it is terminable *only* for cause or upon the occurrence of a specific event is . . . terminable only upon the occurrence of the specified event and not at will." *Id* (emphasis in original).

The Agreement here addresses termination as follows:

13. Except as herein provided, and as provided in Article 14 hereof, this Agreement shall continue in force without limit of period but may be cancelled by the Licensor for **material breach**. In the event of Licensee's **material breach** of this Agreement, Licensor shall notify Licensee of the breach and Licensee shall have ninety (90) days to cure the breach or to request arbitration by a single arbitrator in accordance with the then current rules of the American Arbitration Association. If (i) the decision of the arbitrators is in favor of Licensor or (ii) the material breach has not been cured with the ninety (90)

---

[2] Regarding the claim for breach of the implied covenant of good faith and fair dealing, the covenant does not create an "independent source of duties for the parties to a contract" under Illinois law. *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443 (7th Cir. 1992). Rather, it is essentially a construction tool used to divine the parties' intent or construe ambiguous contract terms. *Anderson v. Burton Assoc., Ltd.*, 267 N.E.2d 199, 203 (Ill. App. Ct. 1991). Here, the Agreement is unambiguous, and DW does not allege otherwise. Accordingly, there can be no claim for breach of the implied covenant.

2

day period and the Licensee has not requested arbitration, the Agreement shall terminate upon thirty (30) days notice by Licensor. Licensor shall be entitled to withdraw any notice of breach hereunder.

(emphasis added). As in *Jespersen*:

This termination provision is not sufficient to take this agreement of indefinite duration out of the general rule of at-will termination for two reasons. First, the language of the termination provision is permissive and equivocal; a party "may" terminate for the stated grounds – the clear inference being that those grounds are not the sole or exclusive basis for termination. This is in stark contrast to a case in which the parties included an exclusive and specific right to terminate for cause in a contract otherwise of indefinite duration. . . . Second, the termination [event is itself an instance] of material breach, and *any* contract is terminable upon the occurrence of a material breach. . . . Where a contract is indefinite in duration, the delineation of instances of material breach in the context of permissible and nonexclusive termination provision will not create a contract terminable for cause.

*Id.* (emphasis in original). Therefore, the Agreement was terminable at will, and Baldwin's decision to exercise that right cannot, as a matter of law, constitute a breach. Accordingly, I dismiss Count I.

Count II: Unjust Enrichment

An unjust enrichment claim exists when one party benefits from services provided by another where, under equity and good conscience, the first party should not retain the benefits. *Louis Glunz Beer, Inc. v. Martlet Importing Co., Inc.*, 864 F.Supp. 810, 818 (quoting *Bd. of Dirs. of Carriage Way Prop. Owners Assoc. v. W. Nat'l Bank*, 487 N.E.2d 974, 978 (Ill. App. Ct. 1985)). The claim "is based on a contract implied in law and, therefore, does not apply where there is a specific contract that governs the relationship of the parties." *Perez v. Citicorp Mortgage, Inc.*, 703 N.E.2d 518, 526 (Ill. App. Ct. 1998) (unjust enrichment claim properly dismissed where an express contract existed). However, "[t]he existence of an express contract

3

will bar a claim under an implied contract theory only where the two alleged contracts cover the *same thing.*" *Louis Glunz Beer, Inc.*, 864 F.Supp. at 818 (emphasis added). Similarly put, "no quasi-contractual claim can arise when a contract exists between the parties concerning the *same subject matter* on which the quasi-contractual claim rests." *Industrial Lift Truck Service Corp. v. Mitsubishi Int'l Corp.*, 432 N.E.2d 999, 1002 (Ill. App. Ct. 1982) (emphasis added). The Court explained:

> When parties enter into a contract they assume certain risks with an expectation of return. Sometimes, their expectations are not realized, but they discover that under the contract they have assumed the risk of having those expectations defeated. As a result, they have no remedy under the contract for restoring their expectations. In desperation, they turn to quasi-contract for recovery. This the law will not allow. Quasi-contract is not a means for shifting a risk one has assumed under contract.

*Id.*

In Count II, DW alleges that DW engaged in numerous activities over the last eighteen years that enhanced the reputation and goodwill of the Wurlitzer trademarks, such as working with the U.S. Postal Service on the issuance of stamps displaying Wurlitzer jukeboxes, donating Wurlitzer jukeboxes to the Patent and Trademark Office Museum for use in a special exhibit, and entering into arrangements with the owners of world-famous brands to manufacture and sell special co-branded goods. DW argues that Baldwin would be unjustly enriched if it were allowed to retain the benefits of these activities without compensating DW. Baldwin responds that this claim is barred because DW was a party to the License Agreement, which covered the "same thing" that is at issue in DW's unjust enrichment claim – DW's use, for whatever purpose, of the Wurlitzer trademarks and the compensation it was paid. *Louis Glunz Beer, Inc.*, 864 F.Supp. at 818. DW counters by saying that the Agreement does not cover the "same thing" at

4

issue in the unjust enrichment claim; rather, the unjust enrichment claim "exists entirely apart from" any claims arising from the Agreement. *Id.*

Unfortunately for DW, the unjust enrichment claim and the Agreement do indeed address the same subject matter – DW's use, for whatever purpose, of the Wurlitzer trademarks and the compensation it was paid for that use. That DW chose to use them to enhance their reputation and goodwill was a risk that it took when it began doing so despite knowing that the Agreement under which it was allowed to use them did not address the specific scenario of compensation for any enhancement of reputation and goodwill. Although DW now finds itself in the position of having no remedy under the contract for restoring their expectations of compensation, it cannot be allowed to use a quasi-contractual theory of unjust enrichment to shift the risk that it had previously assumed. *See First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007 (7th Cir. 1985). Accordingly, I dismiss Count II.

Count III: Abuse of Process

In Count III, DW alleges that Baldwin's motive in bringing this lawsuit is "to harass" DW, cause it "economic hardship," and "to coerce" it into accepting the wrongful purported termination of the Agreement. DW alleges that in furtherance of "these malicious motives," Baldwin deliberately breached the Agreement on the same day it filed the complaint. DW further alleges that filing the complaint was "part of a negotiating strategy designed to intimidate [DW] into allowing Baldwin to avoid its obligations under the License and to deprive [DW] of the business it bought in 1985 and the goodwill it has built up over the last eighteen years." Baldwin's actions purportedly constitute abuse of process in violation of Illinois law.

Illinois courts have generally "taken a very restrictive view of the tort of abuse of process." *Commerce Bank, N.A. v. Plotkin*, 627 N.E.2d 746, 748 (Ill. App. Ct. 1994). To state a claim, a plaintiff must allege: "(1) some act in the use of the legal process not proper in the regular prosecution of such proceedings, and (2) the existence of an ulterior purpose or motive." *Kirchner v. Greene*, 691 N.E.2d 107, 116 (Ill. App. Ct. 1998). To satisfy the first element, the plaintiff must allege that "process has been used to accomplish some result which is beyond the purview of the process or which compels the party against whom it is used to do some collateral thing which could not legally be compelled to do." *Doyle v. Shlensky*, 458 N.E.2d 1120, 1128 (Ill. App. Ct. 1983). "The mere filing of a lawsuit, even with a malicious motive, does not constitute an abuse of process." *Commerce Bank*, 627 N.E.2d at 748.

In arguing for dismissal of this claim, Baldwin argues that even if DW could demonstrate the existence of an ulterior purpose or motive for filing this lawsuit, it has not alleged facts demonstrating that the lawsuit is improper. In response, DW cites *International Union of Operating Eng'rs v. Lowe Excavating Co., Inc.*, No. 98 C 7956, 1999 WL 350650 (N.D. Ill. May 21, 1999), and *Helene Curtis Indus., Inc. v. Milo Corp.*, No. 84 C 5217, 1985 WL 1282 (N.D. Ill. May 2, 1985) in support of the proposition that the lawsuit here is improper. Unfortunately for DW, neither case supports such a conclusion. In *Int'l Union of Operating Engineers*, plaintiff brought suit against the defendant, alleging that defendant had engaged in age discrimination. Defendant filed a counterclaim for, *inter alia*, abuse of process, alleging that the plaintiff's discrimination suit had been filed to force defendant into recognizing plaintiff as defendant's collective bargaining representative. *Int'l Union of Operating Engineers*, 1999 WL 350650 at *2. This conduct, which was plainly a result that could not be obtained by regular prosecution of

the age discrimination claim and that sought to force defendant to do something it was not legally compelled to do, was held to satisfy the requirements of abuse of process. In *Helene Curtis Indus., Inc.*, the Court found that allegations that plaintiff had brought a claim against a competitor to accomplish an anti-competitive result in the market place, a result that could not be accomplished through the regular use of process, stated a claim for abuse of process. 1985 WL 1282 at *2.

Here, by contrast, DW's abuse of process claim does not allege that process was used to accomplish some result that is beyond the purview of the lawsuit. For example, it claims that Baldwin filed the lawsuit to "deprive [DW] of the business it had developed over the prior eighteen years and take the economic benefits of that business for itself." Presumably, DW means by this allegation that by filing this lawsuit Baldwin intended to deprive it of the ability to continue to use the Wurlitzer marks. But that is not beyond the purview of the process or collateral to these proceedings. It is the natural and intended result of every trademark infringement suit to halt the unauthorized use of the trademark owners' marks.

Similarly, DW alleges that the lawsuit was filed to "coerce [DW] into accepting [the termination] by filing suit on the day notice of termination was given." Again, however, there is nothing about this allegation that puts it outside the purview of process. If Baldwin prevails on its claims, DW will be forced to accept the termination.

Finally, DW argues that abuse of process is present here because the suit will "harass" DW and "cause it economic hardship in defending this suit." Causing a defendant to present a defense to litigation is not an abuse of process; it is the natural consequence of submitting claims to a court to be resolved. If "harassing" a defendant by requiring it to defend itself in a lawsuit

was enough to constitute abuse of process, then the mere filing of a lawsuit with a "bad" motive would be enough to state a claim, but it is clearly not. *See, e.g., Commerce Bank, N.A.*, 627 N.E.2d at 748. Accordingly, I dismiss Count III.

For the reasons above, Baldwin's Motion to Dismiss Counterclaim is GRANTED.

ENTER:

James B. Zagel
United States District Judge

DATE: 4 August 2003