# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2105 | **DATE** | 1/5/2004 |
| **CASE TITLE** | BALDWIN vs. WURLITZER | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Defendant's motion (33-1) motion for summary judgment is denied. Answer brief to motion (21-1) for partial summary judgment due 1-20-04. Reply to answer brief due 1-27-04.**
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JAN 07 2004 | |
| ✓ | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 42 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| DW | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BALDWIN PIANO, INC.,

    Plaintiff,

v.

DEUTSCHE WURLITZER GMBH d/b/a
WURLITZER JUKEBOX COMPANY,

    Defendant.

No. 03 C 2105
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Factual Background

Until July 1, 1985, The Wurlitzer Company ("TWC") manufactured and sold jukeboxes and vending machines through defendant Deutsche Wurlitzer GMBH ("DW"), which was then a subsidiary of TWC. In 1985, TWC offered to sell DW to Nelson Tobacco Pty Ltd. ("Nelson Tobacco"), an Australian company owned by Arthur Nelson. Nelson traveled to Chicago with his lawyer, Peter Cameron, to negotiate and sign the purchase documents. Representing TWC at these negotiations were George Howell, the President of TWC; Wallace Borgeson, TWC's Senior Vice President, Finance and Administration; and Michael Madda, a partner at the law firm of Baker & McKenzie. On July 1, 1985, the parties executed a "Purchase And Sale Agreement," to which was attached a "Trademark License Agreement" as Exhibit B ("The Agreement"). Both the documents were prepared by or under the direct supervision of Madda. Since 1985, DW has manufactured, advertised, marketed, and sold various products bearing the Wurlitzer trademarks pursuant to the License Agreement with TWC.

Plaintiff Baldwin Piano, Inc. ("Baldwin") claims to be the successor in interest to the rights of TWC and thus the owner of several federally registered "Wurlitzer" trademarks. On March 24, 2003, Baldwin notified DW that the Agreement was being terminated immediately, that further use of the Wurlitzer trademarks by DW would be unauthorized, and that a complaint would be filed that day and served to protect its rights, which Baldwin subsequently did. In response, DW filed its Answer, Affirmative Defenses and Counterclaim, in which it asserted three claims against DW. On August 4, 2003, I dismissed the Counterclaim against Baldwin. DW now moves for summary judgment on the ground that Baldwin has not properly terminated the Agreement under which DW is permitted to use the Wurlitzer trademark. DW maintains that the Agreement is terminable only upon material breach, whereas Baldwin maintains that the Agreement is terminable at will. Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *NFLC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 234 (7th Cir. 1995).

Analysis

"When enforcing a contract, the primary objective is to construe the contract to ascertain the intent of the parties and to give effect to that intent." *In re Marriage of Olsen*, 528 N.E.2d 684, 687 (Ill. 1988). However, in determining whether the Agreement here is terminable at will or only upon material breach, I must initially look to the language of the contract alone because Illinois follows the "four corners" rule with regard to contract interpretation. *Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 884 (Ill. 1999). If this language is "facially unambiguous," then I must interpret the contract "as a matter of law without the use of parol

evidence." *Id.* at 884. In interpreting the contract, I must give the words used their plain meaning. *Srivastava v. Russell's Barbecue, Inc.*, 523 N.E.2d 30, 33 (Ill. App. Ct. 1988).

Contractual language is ambiguous only if it is reasonably susceptible to more than one meaning. *Air Safety, Inc.*, 706 N.E.2d at 884. However, the License Agreement here is not ambiguous.[1] The Agreement addresses termination as follows:

> 13. Except as herein provided, and as provided in Article 14 hereof, this Agreement shall continue in force without limit of period but may be cancelled by the Licensor for material breach. In the event of Licensee's material breach of this Agreement, Licensor shall notify Licensee of the breach and Licensee shall have ninety (90) days to cure the breach or to request arbitration by a single arbitrator in accordance with the then current rules of the American Arbitration Association. If (i) the decision of the arbitrators is in favor of Licensor or (ii) the material breach has not been cured within the ninety (90) day period and Licensee has not requested arbitration, the Agreement shall terminate upon thirty (30) days notice by Licensor. Licensor shall be entitled to withdraw any notice of breach hereunder.
>
> 14. Licensee hereby agrees that (a) if it makes any assignment of substantially all of its assets or business to an unaffiliated third party without Licensor's consent, which consent shall not be unreasonably withheld if the new owner has a demonstrated ability to meet the financial responsibilities and quality control provisions required of Licensee under this Agreement, or for the benefit of creditors, or (b) if a trustee or receiver is appointed to administer or conduct its business or affairs, or if it is finally adjudged to be either a

---

[1] Because the Agreement is unambiguous, there is no need to resort to various "rules of construction" as DW urges. Under Illinois law, "courts resort to tools of construction when the terms of the contract are ambiguous." *Krause v. GE Capital Mortg. Serv., Inc.*, 731 N.E.2d 302, 310 (Ill. App. Ct. 2000). "However, a court will not resort to rules of construction when the language of a contract is clear and its meaning unambiguous . . . In such a case, the parties' intent is to be gathered from the language of the document itself." *In re Marriage of Belk*, 605 N.E.2d 86, 88 (Ill. App. Ct. 1992).

Because the Agreement is unambiguous, there is also no need to consider parol evidence offered by DW. *See Saddler v. Nat'l. Bank of Bloomington*, 85 N.E.2d 733, 740 (Ill. 1949) ("The intention or understanding of the parties, when there is a written contract in evidence, must be determined not from what the parties thought but from the language of the contract itself."). However, even if I could consider such evidence, there is strong support for the proposition that several of the parties to the Agreement intended that the Agreement be of infinite duration (i.e., be "perpetual" and last "forever"). As a matter of Illinois public policy, however, such perpetual contracts are terminable at will.

3

voluntary or involuntary bankrupt, then the rights granted herein shall forthwith cease and terminate upon thirty (30) days notice by Licensor.

These provisions clearly establish that the Agreement was an agreement of indefinite duration. However, "the rule that contracts of indefinite duration are terminable at will has long been followed" in Illinois. *Jespersen v. Minnesota Mining & Mfg. Co.*, 700 N.E.2d 1014, 1017 (Ill. 1998) (citing *Joliet Bottling Co. v. Joliet Citizens' Brewing Co.*, 98 N.E. 263 (Ill.1912)). This reflects an "important public polic[y]." *Jespersen*, 700 N.E.2d at 1017. Perpetual contracts are contrary to Illinois public policy because:

> 'Forever' is a long time and few commercial concerns remain viable for even a decade. Advances in technology, changes in consumer taste and competition mean that once profitable businesses perish regularly. Today's fashion will tomorrow or the next day inevitably fall the way of the buggy whip, the eight-track tape and the leisure suit. Men and women of commerce know this intuitively and achieve this flexibility needed to respond to market demands by entering into agreements terminable at will.

*Id.* Therefore, under Illinois law, "[c]ontracts of indefinite duration," such as the Agreement here, "are terminable at the will of either party." *Id.* at 1016.

"An agreement without a fixed duration but which provides that it is terminable *only* for cause or upon the occurrence of a specific event is . . . terminable only upon the occurrence of the specified event and not at will." *Id.* (emphasis in original). However, the Agreement's provision here that it "may be cancelled by the Licensor for material breach" does not put the Agreement within the category of contracts terminable only upon material breach. As the Illinois Supreme Court in *Jespersen* explained:

> This termination provision is not sufficient to take this agreement of indefinite duration out of the general rule of at-will termination for two reasons. First, the language of the termination provision is permissive and equivocal; a party "may" terminate for the stated grounds – the clear inference being that those grounds are not the sole or exclusive basis for termination. This is in stark contrast to a case in which the parties included an

4

> exclusive and specific right to terminate for cause in a contract otherwise of indefinite duration.... Second, the termination [event is itself an instance] of material breach, and *any* contract is terminable upon the occurrence of a material breach.... Where a contract is indefinite in duration, the delineation of instances of material breach in the context of permissible and nonexclusive termination provision will not create a contract terminable for cause.

*Jespersen*, 700 N.E.2d at 1016-17 (emphasis in original).

Having failed on the argument that the Agreement is terminable only upon material breach, DW resorts to arguing that because it is "clearly reasonable" to read the Agreement as terminable only for the grounds specified in Articles 13 and 14, the Agreement is ambiguous thus justifying the consideration of parol evidence. Nonetheless, DW's arguments in support of ambiguity fall short. First, DW argues that *Jespersen* does not apply to the Agreement here because of Article 13's use of the opening words "Except as herein provided." DW asserts that there was no such limiting language in the termination clause at issue in *Jespersen* and therefore concluded that the "except as herein provided" language demonstrates an intent that the enumerated grounds in Article 13 be the exclusive grounds for termination. Unfortunately for DW, the *Jespersen* contract contained language virtually identical to that in the License Agreement. Section 2.05 of the contract in *Jespersen* provided, "*Unless terminated as hereinafter provided in Article IV*, this Agreement ... shall continue in force indefinitely and govern all transactions between the parties." *Jespersen v. Minnesota Mining & Mfg. Co.*, 681 N.E.2d. 67, 70 (Ill. App. Ct. 1997), *aff'd*, 700 N.E. 1014 (Ill. 1998) (emphasis added). Nonetheless, the Illinois Supreme Court held that this contract was terminable at will despite the presence of such limiting language. Accordingly, the presence of similar limiting language in the

Agreement here has no effect on my determination that the Agreement is similarly terminable at will. The Agreement falls squarely within the ambit of *Jespersen*.

DW's argument that construing the License Agreement to be terminable at will would render "meaningless" Article 13's provisions for notice of breach, cure, and arbitration is simply wrong. Article 13 provides a vehicle for Baldwin not only to terminate the license, but also to obtain compliance with its provisions. Baldwin may wish to persuade DW to alter its conduct by declaring a breach. In those instances, Baldwin will resort to the notice and cure provisions of Article 13. Alternatively, if Baldwin wishes to terminate for breach, it must abide by Article 13's provisions. The fact that, as a matter of law, Baldwin may elect to terminate the license for other reasons does not render meaningless Article 13's notice, cure, and arbitration provisions. In addition, the presence of a notice of breach, cure period, and arbitration requirement does not substantively alter any rights under the Agreement. *See Profile Prods., LLC v. Soil Management Techs., Inc.*, 155 F.Supp.2d 880, 884 (N.D. Ill. 2001) (presence of notice of breach and cure period "adds nothing substantive and does not make the material breach 'an objective event'").

Finally, equally unfounded is DW's argument that construing the License Agreement to be terminable at will would "thwart" the purpose of the Purchase And Sale Agreement and produce an "absurd" result. This argument is purportedly predicated upon the rule of construction that multiple agreements relating to the same transaction and executed at about the same time should be interpreted together to give effect to the intent of the parties concerning that transaction. *GNB Battery Techs., Inc. v. Gould, Inc.*, 65 F.3d 615, 622 (7th Cir. 1995). Accordingly, DW argues that the License Agreement and the Purchase And Sale Agreement should be "interpreted in harmony" with one another. However, each agreement contains an

6

integration clause. As the Illinois Supreme Court has explained, "where parties formally include an integration clause in their contract, they are explicitly manifesting their intention to protect themselves against misinterpretations which might arise from extrinsic evidence.... An integration clause ... is a clear indication that the parties desire the contract to be interpreted solely according to the language used in the final agreement." *Air Safety, Inc.*, 706 N.E.2d at 885-86. The presence of the integration clauses in each of the agreements therefore indicates the parties' intent that each document should stand on its own and be interpreted as a complete agreement unto itself. *See Wonderlic Agency, Inc. v. Acceleration Corp.*, 624 F.Supp. 801, 804 (N.D. Ill. 1985).[2]

For the reasons above, DW's Motion for Summary Judgment is DENIED, and Baldwin's Objection and Motion to Strike Declarations and Deposition Testimony Submitted in Support of Defendant's Motion for Summary Judgment is DENIED as moot.

ENTER:

James B. Zagel
United States District Judge

DATE: 5\1— 2004

---

[2] DW's argument that the License Agreement should be interpreted "in context" is a disguised attempt to invoke the doctrine of "extrinsic ambiguity." Under this doctrine, an extrinsic ambiguity exists "when someone who knows the context of the contract would know if the contract actually means something other than what it seems to mean." *Air Safety, Inc.*, 706 N.E.2d at 885. However, the Illinois Supreme Court has expressly rejected resort to the "extrinsic ambiguity" doctrine where, as here, the contract at issue has an integration clause. *Id.* at 885-86.