# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2105 | **DATE** | 6/15/2004 |
| **CASE TITLE** | BALDWIN PIANO vs. WURLITZER | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Plaintiff's motion for an order to show cause why defendant should not be held in contempt is granted. Enter memorandum opinion and order.
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | JUN 17 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| DW | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

BALDWIN PIANO, INC.,

    Plaintiff,

v.

DEUTSCHE WURLITZER, GMBH d/b/a
WURLITZER JUKEBOX COMPANY,

    Defendant.

No. 03 C 2105
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiff Baldwin Piano, Inc. ("Baldwin") moved for partial summary judgment, and for the entry of a permanent injunction that would prohibit Defendant Deutsche Wurlitzer GmbH ("DW") from using "any colorable imitation" of the registered WURLITZER trademarks. In opposing Baldwin's motion, DW specifically took issue with the "colorable imitation" language, arguing that this limitation "was inconsistent with Deutsche Wurlitzer's independent right to continue using its corporate name," relying upon paragraph 6(A) of the 1985 Purchase and Sale Agreement. DW argued that "Baldwin's request for a broad and unqualified injunction against [DW's] use of any variant of the WURLITZER mark stands squarely at odds with [DW's] contractually-guaranteed right to use its Wurlitzer corporate name."

My February 17, 2004 Memorandum Opinion and Order granting Baldwin's motion for partial summary judgment flatly rejected DW's assertion:

> DW argues that any order prohibiting it from using any "colorable imitation" of the WURLITZER Registered Trademarks would be inconsistent with its independent right to continue using its corporate name [pursuant to paragraph 6A of the Purchase and Sale] ... That provision simply means that DW can continue to refer to itself as "Deutsche Wurlitzer GmbH," but it does not permit DW to use the WURLITZER Registered

> Trademarks, or "colorable imitations" thereof, on goods or services in commerce after termination of the License Agreement.

*Baldwin Piano, Inc. v. Deutsche Wurlitzer GmbH*, No. 03 C 2105, 2004 WL 406792, at *2 (N.D. Ill. Feb. 17, 2004). Accordingly, the Injunction, entered on February 20, 2004, expressly enjoined DW from, *inter alia*:

> using any WURLITZER Registered Trademarks or any reproduction, counterfeit, copy or colorable imitation of any WURLITZER Registered Trademarks in connection with the sale, offering for sale, distribution, servicing or advertising of jukeboxes or any goods or services that is likely to confuse the public into believing or create the false impression that such goods or services are approved or sponsored or authorized by or are affiliated or otherwise connected with Baldwin, or otherwise infringing any of the WURLITZER Registered Trademarks.

Upon entry of the Injunction, DW launched a rebranding campaign in which it placed the "Deutsche Wurlitzer GmbH" corporate name on its goods and in advertising.[1] As a result of these uses, Baldwin has moved for an order to show cause why DW should not be held in contempt for its alleged willful violation of the Injunction.

The purpose of civil contempt proceedings "is to secure compliance with a prior court order." *Rockwell Graphics Sys. v. DEV Indus.*, 91 F.3d 914, 920 (7th Cir. 1996). Courts have inherent and statutory powers to punish a party that fails to comply with the terms of their orders, and to coerce compliance with such orders. *See, e.g., United States v. Dowell*, 257 F.3d 694, 698 (7th Cir. 2001); 18 U.S.C. §§ 401-02. Moreover, district courts have "considerable latitude" in enforcing their own decrees in a contempt proceeding. *Rockwell Graphics*, 91 F.3d at 920.

---

[1] Because there is no dispute concerning the factual circumstances alleged to constitute the contempt, I may rule on the motion without the necessity of an evidentiary hearing. *See* Local Rule 37.1(b).

2

A party that has been found to have infringed a trademark must "keep a safe distance from the margin line between compliance with the order and a violation." *World's Finest Chocolate, Inc. v. World Candies, Inc.*, 409 F. Supp. 840, 844 (N.D. Ill. 1976); *see also Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423, 1432 (7th Cir. 1985) ("A district court possesses substantial discretion to decide how close is too close, once an infringer has committed a contempt of the original injunction. The court may require the contemnor to choose a distinctively different mark rather than to hew so close to the line that the parties must interminably return to court to haggle about every mark."). Here, by featuring its corporate name, which includes the term "Wurlitzer," on its products and advertisements, DW has violated the Injunction. I specifically addressed the circumstances under which DW could use its corporate name when I issued the Injunction, explaining that DW would still have the right to "refer to itself as 'Deutsche Wurlitzer GmbH,'" but would not be permitted "to use the WURLITZER Registered Trademarks," or "'colorable imitations' thereof, on goods or services in commerce." *Baldwin Piano*, 2004 WL 406792, at \*\*4-5. By prominently featuring its corporate names on its products and in advertisements, DW has gone beyond merely referring to itself as Deutsche Wurlitzer GmbH, and has used these marks "on goods and services in commerce" in violation of the Injunction. This use is "likely to cause confusion" among consumers. 15 U.S.C. § 1127 (a "colorable imitation" is "any mark which so resembles a registered mark as to be likely to cause confusion or mistake or to deceive"); *see also Bunn-O-Matic Corp. v. Bunn Coffee Serv.*, 88 F. Supp. 2d. 914, 922 (C.D. Ill. 2000) ("likelihood of confusion exists as a matter of law if a licensee continues to use marks owned by the licensor after termination of the license"). Also, it is clear that DW's violations are intentional in light of

the fact that DW recognized that an injunction would conflict with its right to use its corporate name in an unfettered manner.

In response, DW argues that it is using the corporate name as a "trade name," not a trademark, and hence it is not subject to my Injunction because its "trade name" is not a "colorable imitation" of the WURLITZER trademarks. Whereas a "trademark" is "any word, name symbol or device or any combination thereof adopted and used by a manufacturer or merchant to identify his goods and distinguish them from those manufactured and sold by others," a "trade name" is "any name used by a person to identify his or her business or vocation." 15 U.S.C. § 1127. While trade names and trademarks are distinct concepts, "[i]t is well settled that, in appropriate circumstances, a name may function as both a trade name and as a trademark and/or a service mark. The question of whether a name used as a trade name or as a part thereof also performs the function of a trademark and/or service mark is one of fact and is determined from the manner in which the name is used and the probable impact thereof upon purchasers and prospective customers." *In re Univar Corp.*, 20 U.S.P.Q.2d 1865, 1866 (C.C.P.A. 1991).

By affixing its corporate name as a stand-alone "logo" to vending machines and jukeboxes, and using it prominently in advertising (separate and apart from its address, telephone number or other contact information), DW is using its corporate name to function as a trademark, *i.e.* to identify its goods and distinguish them from those manufactured and sold by others. *See id.* at 1869 (use of corporate name in logo set apart from other text in advertisements is indicative of trademark usage). In light of the long past history of DW's use of the WURLITZER trademarks, the natural and probable effect on consumers of such usage is to cause them to

believe that DW is approved, sponsored or authorized by or affiliated or otherwise connected with the owner of the WURLITZER trademarks.[2]

If DW sought merely to use its name to identify its business, the references to "Deutsche Wurlitzer, GmbH" that appear in small font at the bottom left-hand corner of the advertisements, along with DW's address and other contact information would have sufficed. *See, e.g., In re Lyndale Farm*, 186 F.2d 723 (C.C.P.A. 1951) (use of address in conjunction with name strengthens inference of trade name, rather than trademark function). But DW's use of its name alone as a logo, featured prominently throughout the advertisements and affixed to the goods themselves, goes far beyond merely identifying DW's "business or vocation." *See, e.g., In re Walker Process Equip.*, 233 F.2d 329, 331 (C.C.P.A. 1956) (application of trade name to merchandise "one of the factors to be considered in determining whether there has been a trademark use"). Accordingly, it is clear that DW's use of "Deutsche Wurlitzer GmbH" on goods and services is a direct violation of the Injunction, and the issuance of an order to show cause is warranted.

---

[2] The fact that the word "Deutsche" (meaning "German") has been added before the mark and the German equivalent of "Corporation" or "Inc." appears after the mark does not change the fact that such use is likely to cause confusion. *See Victoria's Cyber Secret v. V Secret Catalogue, Inc.*, 161 F. Supp. 2d 1339, 1351 (S.D. Fla. 2001) ("it is a bedrock axiom of the Lanham Act that the addition of generic or minor words to a trademark, especially a famous trademark, notwithstanding the positioning of the words, does nothing to abate likely confusion or dilutive effect"); *Rockland Mortgage Corp. v. Shareholders Funding*, 835 F. Supp. 182, 192 n. 18 (finding that plaintiff Rockland Mortgage Corp. was entitled to preliminary injunction enjoining competitor from using Rockwell National Mortgage mark and noting that the word "national" is descriptive of a geographic area, and "does not aid in distinguishing defendant's mark from plaintiff's mark").

For the reasons above, Baldwin's Motion for an Order to Show Cause Why Defendant Should Not Be Held in Contempt is GRANTED.

ENTER:

_____
James B. Zagel
United States District Judge

DATE: JUN 1 5 2004